UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **REGINALD BARBER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 4:14-cv-00319-TIA |
| | ) |
| **DRURY INN CONVENTION CENTER,** | ) |
| | ) |
| **Defendant.** | ) |

**DEFENDANT'S STATEMENT OF UNCONTROVERTED MATERIAL
FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Comes now Defendant DRURY DEVELOPMENT CORPORATION (hereinafter "Defendant" or "DDC"),[1] by and through its undersigned counsel, and pursuant to Federal Rules of Civil Procedure 56 and Eastern District of Missouri Local Rule 7-4.01, and for purposes of this Motion only, hereby submits its Statement of Uncontroverted Material Facts with respect to its Motion for Summary Judgment and Memorandum in Support thereof.

**I.     BACKGROUND**

**A.     Defendant's Operations And Plaintiff's Employment.**

1.     Plaintiff Reginald Barber (hereinafter "Plaintiff" or "Barber") is a male citizen of the United States and the State of Missouri residing in Saint Louis, Missouri, within the Eastern District of Missouri (Exhibit A, Plaintiff's Depo. p. 6, ll. 23-24).

2.     In or around February 2013, Defendant commenced a complete renovation and remodel of Drury Inn & Suites Convention Center ("Convention Center") located at 711 North

---

[1] Plaintiff has named an improper party Defendant inasmuch there is no entity by the name of Drury Convention Center.  The name of the entity at issue in this case is Drury Development Corporation.  Moreover, Plaintiff was not employed by Drury Development Corporation.  Rather, Plaintiff was employed by Express Temporary Services while he worked at the Drury Inn Convention Center (Exhibit A, Plaintiff's Depo. p. 8, ll. 11-14).

{00291708.1}

Broadway, Saint Louis, Missouri, 63102 (Exhibit B, Answer to Complaint, Doc. No. 11, ¶ 3; Exhibit B, Affidavit of B. Gronefeld, ¶ 5).

3. Initially, Mark Zemann ("Zemann"), another Superintendent, oversaw the renovation. Zemann coordinated with Express Employment Professionals ("Express") to obtain temporary construction workers for the project (Exhibit B, Affidavit of B. Gronefeld, ¶ 6).

4. DDC had its own full-time laborers in addition to the temporary staffing provided through Express (Exhibit B, Affidavit of B. Gronefeld, ¶ 8).

5. Majority of DDC's workforce for the Convention Center renovation was primarily male (Exhibit B, Affidavit of B. Gronefeld, ¶¶ 12-13).

6. On or about March 1, 2013, Brad Gronefeld ("Gronefeld") took over as Construction Superintendent of the Convention Center. As Construction Superintendent, Gronefeld was in charge of all the Convention Center's renovations (Exhibit B, Affidavit of B. Gronefeld, ¶¶ 3, 7).

7. Gronefeld has been employed with DDC since April 2006, and, specifically, in the Construction Superintendent position during all times relevant to this lawsuit (Exhibit B, Affidavit of B. Gronefeld, ¶ 3).

8. Gronefeld is responsible for overseeing the day-to-day operations of new construction sites, including the management of construction crews, development of strategic plans, and coordination of all superintendent functions. Specifically, Gronefeld manages sub-contractors by locating, evaluating, and selecting sub-contractors and monitoring their performance. Gronefeld is the only supervisor at the DDC location to effect any change in any employee or temporary employee's employment status, including hiring, firing, promoting, assigning work or scheduling hours. Gronefeld is the only individual that had authority to

initiate or end an Express temporary employee's assignment with DDC (Exhibit B, Affidavit of B. Gronefeld, ¶ 4).

9. Ron Ball ("Ball") has been employed full-time as a skilled tradesman with DDC for many years. Ball assists Gronefeld in overseeing temporary labor and coordination of operations (Exhibit B, Affidavit of B. Gronefeld, ¶ 9).

10. Holman Hernandez ("H. Hernandez") has also been employed full-time as a laborer with DDC as a material handler (Exhibit B, Affidavit of B. Gronefeld, ¶ 10).

11. Ball and H. Hernandez do not have any supervisory authority to effect any change in any employee or temporary employee's employment status, including hiring, firing, promoting, assigning work or scheduling hours. Specifically, Ball and H. Hernandez do not have the authority to initiate or end an Express temporary employee's assignment with DDC (Exhibit B, Affidavit of B. Gronefeld, ¶¶ 9, 10).

12. The male employee who allegedly harassed Plaintiff is Pol Hernandez ("P. Hernandez"). P Hernandez has been employed full-time as a laborer with DDC and he assists H. Hernandez with stocking inventory (Exhibit B, Affidavit of B. Gronefeld, ¶ 11).

13. P. Hernandez does not have any supervisory authority to effect any change in any employee or temporary employee's employment status, including hiring, firing, promoting, assigning work or scheduling hours. Specifically, P. Hernandez did not have the authority to initiate or end an Express temporary employee's assignment with DDC (Exhibit B, Affidavit of B. Gronefeld, ¶ 11).

14. P. Hernandez is approximately five feet and six inches (5' 6") tall and sixty (60) years old (Exhibit B, Affidavit of B. Gronefeld, ¶ 11).

15. Prior to March 10, 2013 and thereafter, the following Express temporary employees were assigned to work at the Convention Center as laborers: Ken Jones, Romaro Smith, Joshua Colvin ("Colvin"), Robbin Clay, and Craig Hicks (Exhibit B, Affidavit of B. Gronefeld, ¶ 12).

16. Prior to March 10, 2013 and thereafter, Justin Rooks ("Rooks"), Harold Johnson and Anthony Faraji were also Express Temporary employees assigned to work at the Convention Center as carpenters (Exhibit B, Affidavit of B. Gronefeld, ¶ 13).

17. On or about March 11, 2013, DDC engaged the temporary services of Plaintiff through Express (Exhibit B, Affidavit of B. Gronefeld, ¶ 14; Exhibit A, Plaintiff's Depo. p. 8, ll. 11-14; p. 16, ll. 12-15).

18. Gronefeld was Plaintiff's supervisor at DDC (Exhibit B, Affidavit of B. Gronefeld, ¶ 4; Exhibit A, Plaintiff's Depo. p. 18, ll. 18-25).

19. Plaintiff was assigned to the Convention Center as a "general laborer." (Exhibit B, Affidavit of B. Gronefeld, ¶ 14; Exhibit A, Plaintiff's Depo. p. 17, ll. 9-16). Plaintiff typically carried large and heavy equipment and materials and performed demolition duties. *Id.* Plaintiff admits that he is very strong (Exhibit A, Plaintiff's Depo. p. 57, ll. 12, 18-20).

**B.** **Procedural Background Of The Case.**

20. On or about August 7, 2013, Plaintiff filed a Charge of Discrimination jointly with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC") (Exhibit C, Charge of Discrimination; Complaint ¶ 7). In his Charge, Plaintiff only alleged sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended. *Id.* Specifically, Plaintiff stated Defendant's employee "slapped [him] on [his] buttocks" on or about April 1, 2013. *Id.*

21. Plaintiff received a Notice of Right to Sue with regard to his sex harassment claim from the MCHR on or about January 13, 2014 (Answer to Complaint, Doc. No. 11, ¶ 8).

22. Plaintiff received a Dismissal and Notice of Rights regarding his claim of sex harassment from the EEOC on or about November 21, 2013 (Answer to Complaint, Doc. No. 11, ¶ 8).

23. Plaintiff filed a Complaint against Defendant on February 21, 2014. The Complaint alleges Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, by (1) sexually harassing him and (2) discriminating against him on the basis of his age. Plaintiff's allegations of harassment consist of one (1) incident wherein P. Hernandez "put his hand on [him and] slapped [his] buttock." (Complaint ¶ 12).

24. On March 18, 2014, Defendant filed a Motion to Dismiss for failure to exhaust his administrative remedies as to the age discrimination claim (Motion to Dismiss, Doc. No. 12).

25. On April 17, 2014, the Court found Plaintiff failed to exhaust his administrative remedies with respect to his age discrimination claim to the extent he failed to allege age discrimination with his Charge of Discrimination filed with the MCHR and EEOC (Order, Doc. No. 20). It dismissed the age discrimination claim. *Id.* Thus, this Court has limited Plaintiff's lawsuit to the sex harassment claim involving the alleged slapping of Plaintiff's buttocks. *Id.*

## II. PLAINTIFF'S COMPLAINT OF HARASSMENT

26. Plaintiff admits that his claim revolves around an isolated incident instigated by P. Hernandez (Complaint ¶ 12; Exhibit A, Plaintiff's Depo. p. 29, ll.11-14; p. 50, ll. 16-21).

27. On or about April 17, 2013, W. Edwin Roussin, an attorney with The Roach Law Firm, sent a letter to Defendant informing it that he represented Plaintiff (Exhibit D). This letter

only refers to the incident on April 1, 2013 where Defendant's employee allegedly touched Plaintiff. *Id.*

28. Plaintiff admitted this letter only referred to the incident on April 1, 2013 when P. Hernandez allegedly slapped his buttocks (Exhibit A, Plaintiff's Depo. p. 43, ll. 13-20).

29. Plaintiff admitted everything in this letter was truthful and accurate (Exhibit A, Plaintiff's Depo. p. 54, ll. 2-4).

30. In his Answer to Defendant's Interrogatories, Plaintiff states the basis for his sexual harassment claim stems from the incidents on April 1, 2013 (Exhibit E, Answer to Defendant's Interrogatories to Plaintiff Nos. 6, 10, 11).

31. Plaintiff explained that P. Hernandez slapped his buttocks with an open hand "like a football player does to a football player." (Exhibit A, Plaintiff's Depo. p. 53, ll. 21-24).

32. Plaintiff testified that after P. Hernandez allegedly slapped his buttocks, he thought "No, I can't hit this old man because I'll break him up." (Exhibit A, Plaintiff's Depo. p. 79, ll. 6-7).

33. On April 1, 2013, around 2 p.m., Barber told Gronefeld that P. Hernandez touched his butt (Exhibit B, Affidavit of B. Gronefeld, ¶ 15).

34. Plaintiff admits he reported the incident to his supervisor, Gronefeld (Exhibit A, Plaintiff's Depo. p. 46, ll. 8-10; p. 50, ll. 16-25).

35. This was the only allegation Barber made against P. Hernandez during his short three week assignment to the Convention Center (Exhibit B, Affidavit of B. Gronefeld, ¶¶ 14-15, 27).

36. Defendant is not aware of any other alleged harassment of Plaintiff before April 1, 2013 (Exhibit B, Affidavit of B. Gronefeld, ¶ 16).

37. Gronefeld was not aware of any sexual comments or inappropriate touching involving P. Hernandez or any other DDC employee towards Plaintiff (Exhibit B, Affidavit of B. Gronefeld, ¶ 16). In fact, Plaintiff admits that Gronefeld never witnessed any other alleged sex harassment (Exhibit A, Plaintiff's Depo. p. 53, ll. 1-4).

38. Plaintiff admits April 1, 2013 was the first time he complained to Gronefeld about P. Hernandez (Exhibit A, Plaintiff's Depo. p. 51, ll. 6-8). Plaintiff also admits he did not inform Gronefeld or any other DDC manager of any other alleged harassment by P. Hernandez besides P. Hernandez slapping Plaintiff on the buttocks (Exhibit A, Plaintiff's Depo. p. 51, ll. 6-8; p. 52, ll. 10-13).

39. Besides Plaintiff's allegations against P. Hernandez, Plaintiff admits that no employee at DDC or Express ever sexually harassed or inappropriately touched Plaintiff in any manner (Exhibit A, Plaintiff's Deposition, p. 29, ll. 15-17).

40. Defendant is not aware of any employee of Express or DDC that observed P. Hernandez inappropriately touch or sexually harass Plaintiff or any other employee (Exhibit B, Affidavit of B. Gronefeld, ¶ 16).

41. Plaintiff admits he did not witness P. Hernandez sexually harass any other employee (Exhibit A, Plaintiff's Deposition, p. 29, ll. 22-24).

### III.    DEFENDANT'S RESPONSE TO PLAINTIFF'S COMPLAINT

42. After Plaintiff complained about P. Hernandez touching his butt, Gronefeld immediately investigated the allegation (Exhibit B, Affidavit of B. Gronefeld, ¶ 17).

43. First, Gronefeld confronted P. Hernandez with Plaintiff's accusations (Exhibit B, Affidavit of B. Gronefeld, ¶ 17).

44. P. Hernandez denied touching Plaintiff (Exhibit B, Affidavit of B. Gronefeld, ¶ 17).

45. Next, Gronefeld asked three (3) individuals working that day whether they saw any interaction between Plaintiff and P. Hernandez. The individuals included: Colvin, Rooks, and Matthew Ativie ("Ativie"). Colvin, Rooks, and Ativie each individually informed Gronefeld they did not see any interaction between Plaintiff and P. Hernandez (Exhibit B, Affidavit of B. Gronefeld, ¶¶ 17-18).

46. Gronefeld's investigation revealed Plaintiff's allegations were unsubstantiated, as no other employees had an issue with P. Hernandez or witnessed him harass Plaintiff (Exhibit B, Affidavit of B. Gronefeld, ¶¶ 17-18).

47. Gronefeld ensured Plaintiff and P. Hernandez were separated (Exhibit B, Affidavit of B. Gronefeld, ¶¶ 19-22).

48. At the time, Plaintiff and P. Hernandez were working in separate areas and had no reason to encounter one another (Exhibit B, Affidavit of B. Gronefeld, ¶¶ 19-20).

49. Since Plaintiff and P. Hernandez were not working in the same area, Gronefeld felt that Plaintiff's problems with P. Hernandez were resolved (Exhibit B, Affidavit of B. Gronefeld, ¶ 22).

50. Even though Gronefeld could not corroborate Plaintiff's allegation, Gronefeld advised P. Hernandez to stay away from Plaintiff (Exhibit B, Affidavit of B. Gronefeld, ¶ 21). Plaintiff admits Gronefeld told P. Hernandez to stay away from Plaintiff (Exhibit A, Plaintiff's Depo. p. 51, ll. 9-11).

### IV.     ALTERCATION LEADING TO END OF PLAINTIFF'S TEMPORARY ASSIGNMENT WITH DRURY DEVELOPMENT CORPORATION

51. After Gronefeld advised P. Hernandez to stay away from Plaintiff, Gronefeld went to the pool area to meet with another contractor (Exhibit B, Affidavit of B. Gronefeld, ¶ 23).

52. Shortly thereafter, Gronefeld heard loud voices coming from the area he just left. As Gronefeld returned to find out what was going on, Gronefeld saw Plaintiff charging at Rooks while Rooks was backing up. By the time Gronefeld reached them, Plaintiff was on top of Rooks and punching him (Exhibit B, Affidavit of B. Gronefeld, ¶ 23).

53. Plaintiff admits he punched Rooks and knocked him down (Exhibit A, Plaintiff's Depo. p. 48, ll. 4-5).

54. Gronefeld pinned Plaintiff's arms back and pulled him from Rooks. However, Plaintiff continued to kick Rooks (Exhibit B, Affidavit of B. Gronefeld, ¶ 24).

55. Once Rooks and Plaintiff were on their feet, Gronefeld separated the two and told them they must leave immediately (Exhibit B, Affidavit of B. Gronefeld, ¶ 25; Exhibit A, Plaintiff's Depo. p. 49, ll. 1-3).

56. Plaintiff stormed off the job site before Gronefeld could speak with him (Exhibit B, Affidavit of B. Gronefeld, ¶ 25).

57. To determine how the altercation began, Gronefeld spoke with everyone on the job site (with the exception of Plaintiff). The only information Rooks provided was that Plaintiff got offended by something he said (Exhibit B, Affidavit of B. Gronefeld, ¶ 26).

58. Rooks and Plaintiff's temporary services were terminated on April 1, 2013 (Exhibit B, Affidavit of B. Gronefeld, ¶ 27; Exhibit A, Plaintiff's Depo. p. 16, ll. 16-18).

59.     Plaintiff admits that the incident, investigation, and physical altercation all took place within approximately thirty (30) minutes (Exhibit A, Plaintiff's Depo. p. 61, ll. 10-15).

Respectfully submitted,

THE LOWENBAUM PARTNERSHIP, LLC

*/s/ Christopher M. Sanders*
Christopher M. Sanders, #55198MO
Jamie N. Mahler #66055MO
222 South Central, Suite 901
Clayton, MO 63105
(314) 746-4809 - *Phone*
(314) 746-4848 - *Fax*
csanders@lowenbaumlaw.com
jmahler@lowenbaumlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have on January 5, 2015, served a true and correct copy of the foregoing via U.S. Mail upon the following:

Reginald Barber
802 Rolwes Avenue
St. Louis, MO 63135

*/s/ Christopher M. Sanders*